UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO DIVISION

JAMAEKA NICHOLLE WILSON-GANTT,

        Plaintiff,

v.                                                     Case No:   6:15-cv-257-Orl-GJK

COMMISSIONER OF SOCIAL SECURITY,

        Defendant.

## MEMORANDUM OF DECISION

Jamaeka Nicholle Wilson-Gantt (the "Claimant"), appeals from a final decision of the Commissioner of Social Security (the "Commissioner") denying her application for Disability Insurance Benefits ("DIB"). Doc. No. 1; R. 206-07. Claimant alleges an onset of disability as of October 22, 2007, and is insured for DIB through December 31, 2012. R. 21, 206. Claimant alleges disability based primarily upon the following impairments: depression; anxiety; back and lower extremity problems; high blood pressure; and diabetes. R. 126. Claimant argues that the Administrative Law Judge (the "ALJ") erred because her findings at step-two of the sequential evaluation process and in the ALJ's residual functional capacity assessment (the "RFC"), regarding Claimant's mental impairments, are not supported by substantial evidence. Doc. No. 24 at 13-17.[1] For the reasons that follow, the Commissioner's final decision is **REVERSED and REMANDED for further proceedings**.

---

[1] Claimant argues the ALJ also erred by: posing a hypothetical question to the vocational expert that did not include any functional limitations from Claimant's mental impairments; making a credibility determination which is not supported by substantial evidence; and relying on the physical functional limitation opinions of a non-examining physician in determining the Claimant's RFC. Doc. No. 24 at 23-40. The Claimant further argues that the Appeals Council erred by declining to consider certain medical evidence submitted to it. Doc. No. 24 at 41-44. However,

## I.   THE ALJ'S FIVE-STEP DISABILITY EVALUATION PROCESS.

Under the authority of the Social Security Act, the Social Security Administration has established a five-step sequential evaluation process for determining whether an individual is disabled. *See* 20 C.F.R. §§ 404.1520(a), 416.920(a). In *Doughty v. Apfel*, 245 F.3d 1274 (11th Cir. 2001), the Eleventh Circuit explained the five-step sequential evaluation process as follows:

> In order to receive disability benefits, the claimant must prove at step one that he is not undertaking substantial gainful activity. At step two, the claimant must prove that he is suffering from a severe impairment or combination of impairments. At step three, if the claimant proves that his impairment meets one of the listed impairments found in Appendix 1, he will be considered disabled without consideration of age, education, and work experience. If the claimant cannot prove the existence of a listed impairment, he must prove at step four that his impairment prevents him from performing his past relevant work. At the fifth step, the regulations direct the Commissioner to consider the claimant's residual functional capacity, age, education, and past work experience to determine whether the claimant can perform other work besides his past relevant work.

*Id*. at 1278 (citations omitted). The steps are followed in order. If it is determined that the claimant is not disabled at a step of the evaluation process, the evaluation will not go on to the next step.

## II.   STANDARD OF REVIEW.

The Commissioner's findings of fact are conclusive if supported by substantial evidence. 42 U.S.C. § 405(g). Substantial evidence is more than a scintilla — i.e., the evidence must do more than merely create a suspicion of the existence of a fact, and must include such relevant evidence as a reasonable person would accept as adequate to support the conclusion. *Foote v. Chater*, 67 F.3d 1553, 1560 (11th Cir. 1995) (citing *Walden v. Schweiker*, 672 F.2d 835, 838 (11th

---

for the reasons set forth below, the ALJ's findings with respect to Claimant's mental impairments are dispositive of the case.

Cir. 1982) and *Richardson v. Perales*, 402 U.S. 389, 401 (1971)); *accord Edwards v. Sullivan*, 937 F.2d 580, 584 n.3 (11th Cir. 1991).

Where the Commissioner's decision is supported by substantial evidence, the District Court will affirm, even if the reviewer would have reached a contrary result as finder of fact, and even if the reviewer finds that the evidence preponderates against the Commissioner's decision. *Edwards*, 937 F.2d at 584 n.3; *Barnes v. Sullivan*, 932 F.2d 1356, 1358 (11th Cir. 1991). The District Court "'may not decide the facts anew, reweigh the evidence, or substitute [its] judgment for that of the [Commissioner].'" *See Phillips v. Barnhart*, 357 F.3d 1232, 1240 n.8 (11th Cir. 2004) (quoting *Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir. 1983)).

### III. <u>ANALYSIS.</u>

At the center of this dispute is the ALJ's handling of Claimant's medically determinable mental impairments of depression and anxiety at step-two and in determining Claimant's RFC. Doc. No. 24 at 13-23. At the hearing, the Claimant testified as follows: her mood changes frequently; her husband believes she is antisocial; her pain interferes with her ability to concentrate; she suffers from depression; and she has been unable to obtain treatment for her depression because providers will not accept her insurance. R. 69, 76, 80. The record contains no treatment records from mental health providers and it is undisputed that Claimant received no such treatment during the relevant time-period. Doc. No. 24 at 17, 20.

The record does contain two (2) medical opinions related to Claimant's depression. R. 500-05, 507-20. On April 14, 2010, Dr. Felix Ortiz, Psy.D. performed a consultative mental health evaluation of Claimant. R. 500-02. On June 1, 2010, Dr. Val Bee, Psy.D. provided a mental RFC and a Psychiatric Review Technique ("PRT") based upon a medical records review and Dr. Ortiz's evaluation. R. 503-05, 507-20. As the ALJ explained in the decision, the

examining and non-examining psychologists both found that Claimant has mental health impairments, which cause functional limitations in her ability to work.   R. 24, 500-2, 503-05, 507-20.

In the decision, at step-two of the sequential evaluation process, the ALJ found that Claimant has the following severe impairments: disorders of the spine; hypertension; diabetes mellitus; and morbid obesity.   R. 23.   The ALJ determined the Claimant's mental impairments are not severe, stating:

> With regard to mental impairments, the claimant testified she is moody because of the pain.  She also stated her husband describes her as "antisocial."   The claimant testified she also has difficulties with her memory.
>
> On April 14, 2010, the claimant presented to Felix Ortiz, Psy.D. for a consultative psychological  evaluation on behalf of Disability Determination Services. The claimant denied difficulties understanding, but said she has problems remembering instructions. She is able to count money and make her own purchases.  The claimant described herself as angry, explaining that she has lost interest  in  activities  that  she  used  to  enjoy. Mental  status examination revealed her mood was irritable and angry.   Her affect was consistent with her mood. <u>The claimant's attention and concentration were unremarkable. Her recent and remote memories reflected moderate to severe deficits as she recalled none of 3 words and was unable to recall any important people or events from her past.   Dr. Ortiz diagnosed major depressive disorder and generalized anxiety disorder. He opined that the claimant's symptoms appear to be moderately impacting activities of daily living, vocational performance, and activities of daily living</u>. Despite this, the claimant performs some routine daily activities and is capable of maintaining meaningful relationships. [Citing R. 500-02].
>
> Disability Determination Services consultant Val Bee, Psy.D. opined the claimant has moderate limitations in concentration, persistence, and pace. [Citing R. 517]. Dr. Bee opined that the claimant's depression and anxiety symptoms disrupt detailed learning and concentrating on complex or simultaneous demands, but she appears capable of well-structured task activity. [Citing R. 505].

R. 23-24 (emphasis added).[2]  Thus, at step-two, the ALJ provides a generally accurate description of Drs. Ortiz and Bee's opinions.  R. 24, 503-05.[3]  Dr. Bee also provided additional opinions not expressly addressed by the ALJ.  R. 503-05, 507-20.

In Dr. Bee's mental RFC, she also opined that Claimant has noted irritability, "but she generally appears capable of at least superficially appropriate social interaction" and "[m]ay need support with suitable goal setting."  R. 505.  In her PRT, Dr. Bee diagnosed Claimant with depressive syndrome characterized by the following symptoms: anhedonia or pervasive loss of interest in almost all activities; sleep disturbance; decreased energy; feelings of guilt or worthlessness; and difficulty concentrating.  R. 510.  Dr. Bee also opined that Claimant has a medically determinable impairment of generalized anxiety disorder.  R. 512.  Dr. Bee further opined that Claimant has mild limitations in activities of daily living; mild limitations in maintaining social functioning, and moderate limitations in maintaining concentration, persistence or pace.  R. 517.  Dr. Bee concluded that these limitations do not meet or equal the severity requirements for any listing.  R. 519.  The record before the ALJ contains no other medical opinions or treatment records concerning Claimant's mental impairments or what, if any, functional limitations result from those impairments.

Despite Drs. Ortiz and Bee both opining that Claimant has functional limitations stemming from her medically determinable mental impairments, the ALJ determined that Claimant's mental

---

[2] The ALJ's statement that Dr. Ortiz opined that Claimant's mental impairments moderately impact her "activities of daily living, vocational performance, and <u>activities of daily living</u>," is redundant and inaccurate.  R. 24 (emphasis added).  In fact, Dr. Ortiz opined as follows: "The symptoms based on client reports and clinical observations appear to be moderately impacting activities of daily living, vocational performance, and <u>interpersonal interactions</u>."  R. 502 (emphasis added).

[3] While the ALJ generally provided accurate description of Dr. Bee's actual RFC opinion, as an aid in rendering the same, Dr. Bee completed a checklist indicating that Claimant's mental impairments result in moderate limitations in several areas.  R. 503-04.

impairments are not severe. R. 24. The ALJ finds: "[T]he claimant's medically determinable mental impairment of depression/anxiety is not found to cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is, therefore, nonsevere. . . ." R. 24. In making this finding, the ALJ states as follows:

> <u>The undersigned gives significant weight to the opinions of Drs. Ortiz and Bee that the claimant is capable of maintaining meaningful relationships and performing well-structured task activities as these are consistent with her activities of daily living</u>. The general finding of moderate limitations in concentration, persistence, and pace, however, is not accepted as it is inconsistent with the specific findings of each health care specialist. More importantly, despite the claimant's alleged difficulties concentrating due to pain, <u>she has not sought treatment for mental health symptoms, suggesting they are not as bothersome as alleged</u>. The claimant is not prescribed medications for depression or anxiety and her primary care physician, Dr. Phillippa, does not note any psychological abnormalities whatsoever. The claimant reported she is able to go online to renew her application for food stamp recertification (Exhibit 17-F) and maintains personal relationships. At the hearing, <u>the claimant reported activities such as using the computer and playing games during the day</u>. In addition, she testified that she was enrolled in college courses. <u>The [ALJ] finds there is no compelling evidence of any functional or cognitive deficits that would limit the claimant's ability to perform tasks commonly found in work settings</u>.

R. 24 (emphasis added).[4] Thus, the ALJ gave significant weight to Drs. Ortiz and Bee's opinions, but only only to the extent they opined Claimant "is capable of maintaining meaningful relationships and performing well-structured task activities." R. 24. One sentence from Dr. Ortiz's opinion states that Claimant is "capable of maintaining meaningful relationships," and one sentence from Dr. Bee's opinion states Claimant is "capable of well structured task activity." R. 505. Other than those two narrow portions from Drs. Ortiz and Bee's opinions, the ALJ rejects

---

[4] The ALJ's statement that Claimant testified to being enrolled in college courses (R. 24) is somewhat misleading. R. 24. Claimant testified she had to stop going to college in 2009 because of her symptoms and limitations. R. 60, 76.

their opinions.   R. 24.

The ALJ gives the following five (5) reasons for rejecting their opinions: (1) their "general finding" of moderate limitations in concentration, persistence or pace is inconsistent with "the specific findings of each health care specialist" (R. 24); (2) Claimant "has not sought treatment for mental health symptoms" (R. 24 (emphasis added)); (3) Claimant is capable of renewing her food stamps online, she can play computer games, and maintain personal relationships; (4) Claimant was enrolled in college courses; and (5) there is no "compelling evidence of any functional or cognitive deficits that would limit the claimant's ability to performs tasks commonly found in work settings" (R. 24).

The ALJ then finds that Claimant has mild limitations in activities of daily living, social functioning, and in concentration, persistence or pace.   R. 24-25.   With respect to social functioning, the ALJ states "[t]here is no indication the claimant is unable to maintain appropriate social relationships."   R. 25.   In the domain of concentration, persistence or pace, the ALJ states that Claimant is able to play games, her attention and concentration were unremarkable at Dr. Ortiz's evaluation; and she is able to renew her food stamps online.   R. 25.   Within that domain, the ALJ concludes: "There is little evidence of distinct limitations in communication, understanding, comprehension, and concentration."   R. 25.

After "consider[ing] all symptoms and the extent to which these symptoms can be reasonably accepted as consistent with the objective medical evidence and other evidence," the ALJ makes the following RFC determination:

> After consideration of the entire record, the [ALJ] finds that, through the date last insured, the claimant had the [RFC] to perform sedentary work . . . with occasional lifting/carrying ten pounds; frequent lifting/carrying five pounds; standing or walking two hours of an eight hour workday; and, sitting six hours of an eight hour workday.  The claimant must be able to change positions at will.

> She is capable of occasionally stooping, but cannot climb, balance, kneel, crouch, or crawl. She should avoid exposure to concentrated vibrations or workplace hazards.

R. 26. Thus, the ALJ's RFC contains no limitations from Claimant's mental impairments and is based solely on Claimant's physical or exertional impairments. R. 26. The ALJ provides a good summary of the medical record related to Claimant's physical impairments, Claimant's testimony and the physical medical opinions of record. R. 26-30. The ALJ also provides an explanation for the physical limitations contained in her RFC. R. 26-30. However, at no point in the ALJ's analysis of her RFC does the ALJ discuss the Claimant's mental impairments or symptoms and explain why the ALJ determined Claimant has no functional limitations therefrom. R. 26-30.[5] In that same section of the decision, the ALJ finds Claimant's subjective testimony not credible, but specifically states that "claimant's testimony regarding her physical inability to work is not entirely credible." R. 29 (emphasis added). Thus, the ALJ's credibility determination is limited solely to Claimant's physical limitations. R. 29-30.

**A. Rejection of Ortiz and Bee's Opinions Not Supported by Substantial Evidence.**

"An ALJ may not arbitrarily reject uncontroverted medical evidence." *Jones v. Astrue*, 494 F. Supp. 2d 1284, 1289 (N.D. Ala. 2007) (citing *Walden v. Schweiker*, 672 F.2d 835, 839 (11th Cir. 1982)). In *Jones*, 494 F.2d at 1289, the ALJ rejected a medical opinion regarding the claimant's mental impairments because it appeared to contain inconsistencies. *Id*. The Court found the ALJ erred because that opinion was "the only medical opinion contained in the record regarding the [claimant's] mental impairments," and because the reason provided by the ALJ was conclusory. *Id*. The Court explained that "[i]n rejecting [the] opinion, the ALJ 'succumbed to

---

[5] For example, the ALJ mentions Dr. Ortiz's evaluation, but only to the extent Dr. Ortiz noted Claimant walked with a cane, changed positions to get comfortable, and reported that she is unable to physically do household chores. R. 28.

the [forbidden] temptation to play doctor and make [his] own independent medical findings.'" *Id*. (quoting *Rohan v. Chater*, 98 F.3d 966, 970 (7th Cir. 1996)).

In this case, Dr. Ortiz's evaluation and opinion (R. 500-02), and Dr. Bee's mental RFC and PRT (R. 503-05, 507-20), are the only medical evidence and opinions in the record regarding Claimant's alleged mental impairments. R. 1-870. In addition, their opinions are consistent with each other, at least to the extent they both opine that Claimant has medically determinable mental impairments, which cause functional limitations in Claimant's ability to work. *Compare* R. 500-02 *with* 503-05, 507-20. Therefore, Dr. Ortiz and Bee's opinions are uncontroverted.

Similar to *Jones*, 494 F. Supp. 2d at 1289, in this case, the ALJ's reasons for rejecting nearly all of Drs. Ortiz and Bee's opinions are not supported by substantial evidence. The ALJ's first reason, that their "general opinions" conflict with their "specific finding[s]," is vague and conclusory. R. 24. For example, while Dr. Ortiz's mental status examination did find Claimant's attention and concentrations were "unremarkable," he also found that Claimant's "[r]ecent and remote memories reflected moderate/severe deficits as she recalled none of 3 words in one trial and was unable to recall any important people or events from her past." R. 501. Without the ALJ providing an explanation as to how the "general findings" conflict with the "specific findings," the Court cannot determine whether the ALJ's conclusion is supported by substantial evidence.

The ALJ's second reason for rejecting the opinions is that Claimant never "sought treatment for mental health symptoms." R. 24. To the contrary, at the hearing, Claimant testified that she has been unable to <u>obtain</u> treatment because providers would not take her insurance. R. 80.[6] Claimant's inability to afford mental health treatment is not a basis to reject the opinions of

---

[6] Since the ALJ's credibility determination was expressly limited to Claimant's physical impairments and subjective limitations therefrom (R. 29-30), the ALJ did not address Claimant's credibility with respect to mental impairments

examining and non-examining psychologists concerning the existence, severity, and limiting effect of Claimant's mental impairments. *See generally Dawkins v. Bowen*, 848 F.2d 1211, 1213 (11th Cir. 1988) ("[W]hile a remediable or controllable medical condition is generally not disabling, when a claimant cannot afford the prescribed treatment and can find no way to obtain it, the condition that is disabling in fact continues to be disabling in law.") (internal citations and quotations omitted). Thus, the ALJ's second reason for rejecting Drs. Ortiz and Bee's opinions is not supported by substantial evidence.

The ALJ's third reason for rejecting Drs. Ortiz and Bee's opinions is that Claimant is capable of renewing her food stamps applications, playing computer games and maintaining personal relationships. R. 24. It is unclear how engaging in such menial activities refutes Drs. Ortiz and Bee's opinions as to Claimant's mental limitations. Furthermore, Dr. Ortiz considered similar activities of Claimant's daily living in forming his opinion, but nevertheless found Claimant had moderate limitations regarding daily living and work activities. R. 500, 502. Finally, the ALJ appears to have cherry-picked certain portions of Dr. Ortiz's opinion by only relying on certain portions of his opinion while ignoring other portions that support his opinion. R. 24.[7] For example, Dr. Ortiz notes that Claimant reported an inability to engage in any household chores, as wells as a lack of meaningful relationships outside her immediate family, and Dr. Ortiz opined that Claimant's statements appeared credible. R. 500-01. However, the ALJ does not discuss those portions of Dr. Ortiz's opinion, all of which support Dr. Ortiz's opinion that Claimant's mental impairments moderately impact her ability to perform activities of daily living,

---

or her inability to obtain mental health treatment due to a lack of insurance.

[7] *See Hodgman v. Colvin*, No. 3:14-cv-1110-J-MCR, 2016 WL 860260, at *5 (M.D. Fla. Mar. 7, 2016) (citing *Myles v. Astrue*, 582 F.3d 672, 678 (7th Cir. 2009) ("An ALJ is obligated to consider all relevant medical evidence and may not cherry-pick facts to support a finding of non-disability while ignoring evidence that points to a disability finding.")).

vocational performance, and interpersonal interactions. R. 500-02. Accordingly, the ALJ's third reason is not supported by substantial evidence.

The ALJ's fourth reason for rejecting their opinions is that Claimant "was enrolled in college courses." R. 24. As set forth above (*see supra* n.5) Claimant testified that she had to leave college in 2009 due to her impairments, which supports rather than contradicts Drs. Ortiz and Bee's opinions. R. 60, 76. The ALJ's fifth reason is also vague, conclusory and not supported by substantial evidence. The ALJ states there is no "compelling evidence of any functional or cognitive deficits" that would limit Claimant's ability to work. R. 24. However, as set forth above, Dr. Ortiz's mental status examination revealed that Claimant had moderate to severe deficits in recent and remote memory, and mild deficits in basic mathematics and reasoning. R. 501. Thus, the ALJ's fourth and fifth reasons for rejecting Drs. Ortiz and Bee's opinions are not supported by substantial evidence. Accordingly, as the ALJ's reasons for rejecting the only evidence in the record regarding Claimant's mental impairments and functional limitations therefrom are not supported by substantial evidence, the ALJ has arbitrarily rejected uncontroverted medical evidence. *Jones*, 494 F. Supp. at 1289.

**B. Step-Two and RFC.**

While the ALJ's handling of the mental health evidence at step-two is not supported by substantial evidence, the question becomes whether that amounts to an error warranting remand. In order to constitute a severe impairment at step-two, an impairment must significantly limit an individual's ability to perform basic work skills. 20 C.F.R. § 416.920(c). In contrast, the Eleventh Circuit has found that an "impairment can be considered as not severe only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education or work experience."

*Brady v. Heckler*, 724 F.2d 914, 920 (11th Cir. 1984).   The Eleventh Circuit has "described step two as a 'filter' requiring the denial of any disability claim where no severe impairment or combination of impairments is present."  *Tuggerson-Brown v. Commissioner of Social Security*, 572 F. App'x 949, 950 (11th Cir. 2014) (unpublished and quoting *Jamison v. Bowen*, 814 F.2d 585, 588 (11th Cir. 1987)).[8]

In this case, Drs. Ortiz and Bee's uncontroverted medical opinions demonstrate that Claimant has severe mental health impairments.  R. 500-02, 503-05, 507-20.  An ALJ's failure to find any given impairment severe is generally not a prejudicial error so long as the ALJ finds a severe impairment and proceeds to the next step in the sequential evaluation process. *Tuggerson-Brown v. Commissioner of Social Security*, 572 F. App'x at 950-951.  "An ALJ's failure to find an additional impairment to be 'severe' may be harmless, even if erroneous, where the ALJ proceeds beyond step two of the sequential analysis <u>and it is apparent from the decision that the ALJ considered any limitations imposed by the impairment in assessing the claimant's [RFC]</u>." *Fellows v. Astrue*, 2011 WL 4005239, at *3 (M.D. Ala. Sept. 8, 2011) (emphasis added).  Thus, the ALJ's errors at step-two will be harmless, if the ALJ considered any limitations imposed by Claimant's mental impairments in assessing the RFC.

In this case, the ALJ did not include any limitations in the ALJ's RFC from Claimant's mental impairments or demonstrate whether she even considered Claimant's mental impairments when determining Claimant's RFC.  R. 26-30.  An ALJ must demonstrate through well-articulated factual findings that the ALJ has considered each of a claimant's alleged impairments, singly and in combination, whether severe or non-severe, and the ALJ must address the limitations, if any, caused by the combined effect of those impairments.  *See Gibson v. Heckler*, 779 F.2d 619,

---

[8] In the Eleventh Circuit, unpublished decisions are not binding, but are persuasive authority.  *See* 11th R. 36-2.

623 (11th Cir. 1986); *Walker v. Bowen*, 826 F.2d 996, 1001-02 (11th Cir. 1987). The ALJ's decision is devoid of any discussion or analysis of whether Claimant has limitations from her mental impairments. R. 26-30. After erroneously determining that Claimant's mental impairments were non-severe at step-two, the ALJ's never mentions them again. R. 26-30. Thus, it is apparent from the face of the ALJ's decision that the ALJ's error at step-two is not harmless. *Id.*; *see Fellows*, 2011 4005239, at *3.[9] Accordingly, based on the record in this case, the Court finds that the ALJ's errors at step-two are not harmless.[10]

## IV. CONCLUSION.

The Commissioner's final decision is not supported by substantial evidence and must be reversed and remand based on the ALJ's related errors with respect to the opinions of Drs. Ortiz and Bee, at step-two, and in determining Claimant's RFC.[11]

Based on the forgoing, it is **ORDERED** that:

1. The Commissioner's final decision is **REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g)**; and

2. The Clerk is directed to enter judgment in favor of the Claimant and against the Commissioner, and to close the case.

---

[9] Although it did not happen here, this case is an example of an instance where the Commissioner frequently agrees further administrative review should occur and voluntarily moves for remand. Such decisions promote the interest the parties and the Court have in obtaining a just, speedy, and inexpensive resolution of proceedings such as this.

[10] The ALJ's decision contains boilerplate language stating that the ALJ has considered all of the Claimant's symptoms in determining the RFC. R. 26. However, in this case, the Court finds that the boilerplate language not sufficient to render harmless the ALJ's errors at step-two. *See Gibson*, 779 F.2d at 623 (ALJ must make well-articulated findings of fact regarding the combined effect and limitations from all of the claimant's impairments); *Fellows*, 2011 4005239, at *3 (ALJ's decision must demonstrate consideration of limitations from non-severe impairments for step-two errors to be harmless).

[11] A the case must be remanded based on the ALJ's above stated error, it is unnecessary to address the Claimant's remaining arguments. *See Diorio v. Heckler*, 721 F.2d 726, 729 (11th Cir. 1983) (on remand the ALJ must reassess the entire record).

**DONE** and **ORDERED** in Orlando, Florida on September 8, 2016.

_____
GREGORY J. KELLY
UNITED STATES MAGISTRATE JUDGE

Copies furnished to:
Counsel of Record